**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **JONATHAN ALSTON,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Case No.: GJH-21-00040** |
| | * | |
| **NAVY FEDERAL CREDIT UNION** *et al.*, | * | |
| **Defendants.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Jonathan Alston brought this civil action against Defendants Department Stores National Bank ("DSNB"), Macy's Inc., FDS Thrift Holding Co. ("FDS"),[1] Citibank, N.A., and Navy Federal Credit Union, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law §§ 14-201 *et seq.*, the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-10 *et seq.*, as well as a defamation claim. ECF No. 21. Pending before the Court is DSNB's Motion to Compel Arbitration and to Stay, ECF No. 18; DSNB's Renewed Motion to Compel Arbitration, ECF No. 26; the Joint Motion to Compel Arbitration or, in the Alternative, Motion to Dismiss filed by Defendants Macy's, FDS, and Citibank, ECF No. 30; Plaintiff's Motion for Leave to File his Opposition to Defendants' Motion to Compel, ECF No. 32; Defendant Macy's, Inc.'s Motion for Sanctions, ECF No. 37; and Plaintiff's Motion for Leave to File a Second Amended Complaint, ECF No. 38. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, the Court grants Plaintiff's Motion for Leave to

---

[1] Plaintiff voluntarily dismissed this Complaint as to FDS Thrift Holding Co. on April 28, 2021. ECF No. 36.

File a Second Amended Complaint and denies the remaining motions pending before the Court.

## I.     BACKGROUND[2]

### A.     Parties

Plaintiff Jonathan Alston is a consumer who resides in Maryland. ECF No. 38-3 ¶ 2, Defendant Macy's is a retail company operating stores, websites, and mobile applications under various brands, including Macy's, Bloomingdale's, and Bluemercury. *Id.* ¶ 3. Defendant Citibank is a national bank that offers a variety of banking products and services. *Id.* ¶ 4. DSNB, a subsidiary of Citibank, is a service company created by Macy's and Citibank to jointly handle the credit card operations of Macy's and Bloomingdale's department stores. *Id.* ¶ 5. DSNB issues Macy's charge card accounts. *Id.* ¶ 9. FDS—a former defendant in this action—is a bank subsidiary of Macy's that, relevant to the instant case, services Macy's charge card accounts in the early stages of delinquency, *i.e.*, 0 to 119 days delinquent. *Id.* ¶¶ 3, 9. DSNB services Macy's charge card accounts in the later stages of the delinquency, *i.e.*, 120 days delinquent or more. *Id.* ¶ 9. Finally, Navy Federal Credit Union is the largest credit union in the word. *Id.* ¶ 6.[3]

### B.     Factual Allegations

Plaintiff's credit report includes three items that contain negative information.[4] *Id.* ¶ 6.[5] Plaintiff alleges that Defendants DSNB, Macy's, and Citibank are responsible for one negative

---

[2] Unless otherwise stated, the background facts are taken from Plaintiff's proposed Second Amended Complaint, ECF No. 38-3, and are presumed to be true.

[3] Plaintiff's proposed Second Amended Complaint contains two paragraphs numbered 6. ECF No. 38-3. This citation refers to the first Paragraph 6.

[4] "The term 'negative information' means information concerning a customer's delinquencies, late payments, insolvency, or any form of default." 15 U.S.C. § 1681s-2(a)(7)(G)(i).

[5] Plaintiff's proposed Second Amended Complaint contains two paragraphs numbered 6. ECF No. 38-3. This citation refers to the second Paragraph 6.

item—a charged-off Macy's charge card, identified as DSNB/MACYS tradeline[6] on Plaintiff's credit reports with Equifax, Experian, and Trans Union. *Id.* ¶ 7. The charge card in question was charged off in or about April 2016. *Id.* ¶ 10. Thereafter, Macy's transferred the charge account to Citibank for collections. *Id.* In response to a communication from Citibank about the debt, Plaintiff paid off the charge account in full on or about July 24, 2017. *Id.* ¶ 11.

Defendants DSNB, Macy's, and Citibank are sources for information for the DSNB/MACYS tradeline, which reports a charged-off debt with a $124 outstanding balance. *Id.* ¶ 12. Defendants DSNB, Macy's, and Citibank's reporting for the DSNB/MACYS tradeline was inaccurate because Defendants reported several charge-offs when there was a single charge-off and because Defendants reported that the charge-off occurred recently when it occurred several years ago. *Id.* Moreover, Defendants DSNB, Macy's, and Citibank inaccurately reported the balance and status of the DSNB/MACYS tradeline because they reported the charge-off as unpaid with a $124 balance when Plaintiff had paid off the debt. *Id.* ¶ 14. Finally, Defendants DSNB, Macy's, and Citibank's reporting of the account was incomplete because it did not include the Date of First Delinquency. *Id.* ¶ 15.

According to Plaintiff, Citibank has admitted that it does not know what the balance of the Macy's charge card account was on June 24, 2016, the day the account was charged off. *Id.* ¶ 16. Nor does Citibank know what the balance was on July 24, 2017, the day Plaintiff alleges that Citibank received the final payment on the account. *Id.* ¶ 17. After Citibank's admissions, Plaintiff told Citibank, as he had told Defendants Macy's and DSNB, that the account had been

---

[6] "A tradeline is a term used by credit reporting agencies to describe credit accounts listed on [a consumer's] credit report. For each account [the consumer has], there is a separate tradeline, which includes information about the creditor and the debt." Ben Luthi, *What are Tradelines and How Do They Affect You?*, EXPERIAN.COM (May 1, 2019), https://www.experian.com/blogs/ask-experian/what-are-tradelines/; *see also* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

paid in full and should reflect a zero balance. *Id.* ¶ 18. Nevertheless, despite knowing that its records are incomplete with respect to Plaintiff's Macy's charge card balance, Citibank still claims Plaintiff owes $124 and has continued to attempt to collect that balance. *Id.* ¶¶ 19–20.

Navy Federal Credit Union is responsible for the other two items on Plaintiff's credit report that include negative information. *Id.* ¶ 21. Navy Federal Credit Union reported a single charge-off to two credit bureaus, Equifax and Trans Union, and reported two charge-offs, including a duplicate, to Experian. *Id.* Navy Federal Credit Union's reporting was inaccurate because Navy Federal Credit Union reported several charge-offs when there was only a single charge-off and because it reported the charge-off occurred recently when the charge-off occurred several years ago. *Id.* ¶ 22. Moreover, Navy Federal Credit Union's reporting of the second charge-off was inaccurate because Plaintiff did not have two accounts with Navy Federal Credit Union. *Id.* ¶ 23.

On or about September 2020, October 2020, and February 2021, Plaintiff mailed written letters to the credit bureaus that disputed the inaccurate information being furnished on his credit reports by Defendants. *Id.* ¶ 25. Approximately thirty days later, Plaintiff received dispute results from the credit bureaus that stated Defendant furnishers of information did not make any corrections to their reporting. *Id.* ¶ 26. Plaintiff alleges that Defendants received an Automated Credit Dispute Verification Form ("ACDV") and a copy of Plaintiff's dispute letter from the credit bureaus but did not properly respond to Plaintiff's dispute. *Id.* ¶¶ 27–28. Instead, Defendants only confirmed that the information they furnished to the credit bureaus matched the information in Defendants' systems. *Id.* ¶ 28.

### C.    Procedural History

Plaintiff initiated this civil action in the Circuit Court of Prince George's County,

Maryland on November 23, 2020, alleging an FCRA claim and a defamation claim against Macy's, FDS, and Navy Federal Credit Union. ECF No. 1 at 1;[7] ECF No. 3. On January 6, 2021, Defendants removed the action to this Court. ECF No. 1. While Navy Federal Credit Union filed its Answer on January 13, 2021, ECF No. 13, on the same day, Plaintiff and Defendants Macy's and FDS filed a Joint Motion to Substitute Parties and to Extend Time, requesting that the Court substitute DSNB as a defendant in this action in lieu of Macy's and FDS. ECF No. 12. Specifically, the parties stated that they were requesting the "substitution because Plaintiff's credit account that is the subject of this lawsuit was with DSNB only, and Plaintiff did not and does not have a credit account with Macy's or FDS." ECF No. 12 at 1. The Court granted the Joint Motion to Substitute Parties on January 27, 2021. ECF No. 16.

On February 10, 2021, DSNB filed its first Motion to Compel Arbitration and to Stay, ECF No. 18. Plaintiff did not respond and, therefore, Defendants, on February 26, 2021, filed a Notice and Request for Entry of Order Granting Motion to Compel. ECF No. 19. Plaintiff responded by filing an Amended Complaint on March 1, 2021. ECF No. 21. While DSNB and Navy Federal Credit Union remained defendants, Plaintiff's First Amended Complaint added Macy's and FDS back into the action and added Citibank as a new defendant. ECF No. 21.

On March 12, 2021, Navy Federal Credit Union again filed an Answer, ECF No. 25, while DSNB filed a renewed Motion to Compel Arbitration, ECF No. 26. Plaintiff filed his Opposition to DSNB's Motion to Compel on March 26, 2021, ECF No. 27, and DSNB replied on April 7, 2021, ECF No. 29.

Also on April 7, 2021, Defendants Macy's, FDS, and Citibank filed a Joint Motion to Compel Arbitration or, in the Alternative, Motion to Dismiss. ECF No. 30. Plaintiff did not reply

---

[7] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

to the Joint Motion to Compel and, consequently, on April 22, 2021, Defendants Macy's, FDS, and Citibank filed a Notice and Request for Entry of Order Granting Joint Motion to Compel Arbitration or, in the Alternative, Motion to Dismiss. ECF No. 31. Plaintiff responded on April 26, 2021, by filing a Motion for Leave to File His Opposition to Defendants' Motion to Compel, ECF No. 32, but Plaintiff did not attach a proposed opposition, nor has one been submitted since. Defendants Macy's, FDS, and Citibank, opposed Plaintiff's Motion for Leave to File His Opposition to Defendants' Motion to Compel on April 27, 2021, ECF No. 34, and Plaintiff replied on May 4, 2021, ECF No. 39.

On April 26, 2021, along with his Motion for Leave to File His Opposition, Plaintiff filed a Notice of Voluntary Dismissal, voluntarily dismissing DSNB without prejudice. ECF No. 33. Two days later, Plaintiff attempted to withdraw his Notice of Voluntary Dismissal, stating that he intended to dismiss FDS, not DSNB, ECF No. 35, and filed a new Notice of Voluntary Dismissal, voluntarily dismissing FDS, ECF No. 36. The following day Macy's filed a Motion for Sanctions under Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and the inherent powers of this Court. ECF No. 37.

Finally, Plaintiff filed a Motion for Leave to File Second Amended Complaint on May 3, 2021, which attached a proposed Second Amended Complaint. ECF No. 38. Plaintiff asserts the proposed Second Amended Complaint addresses the issues raised in Defendants' Joint Motion to Compel or, in the Alternative, Motion to Dismiss. ECF No. 38-1 at 1. Defendants Macy's and Citibank filed their opposition on May 17, 2021, ECF No. 40, and Plaintiff replied on June 1, 2021, ECF No. 42.[8]

---

[8] Michael B. Brown, Esq., counsel for Defendants Macy's and Citibank, has also filed a Motion for Leave to Withdraw as Counsel pursuant to Local Rule 101.2(b). ECF No. 41. Because Macy's and Citibank will continue to be represented by E. Hutchinson Robbins, Jr. and the law firm of Miles & Stockbridge, P.C., the Court grants the Motion for Leave to Withdraw as Counsel. ECF No. 41.

## II.      MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

### A.      Standard of Review

Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave" to parties to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). "This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). The Fourth Circuit has "interpreted Rule 15(a) to provide that 'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" *Id.* (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)); *see also Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012). "Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards," and would therefore not survive a motion to dismiss pursuant to Rule 12(b)(6). *Davison v. Randall*, 912 F.3d 666, 690 (4th Cir. 2019) (quoting *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011)).

To state a claim that survives a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The "mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). The Court accepts "all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th

7

Cir. 2009). The Court must also "draw all reasonable inferences in favor of the plaintiff." *Id.* at 253 (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). "[B]ut [the Court] need not accept the legal conclusions drawn from the facts, and . . . need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Id.* (first alteration in original) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

"Under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider exhibits, without converting the motion to dismiss to one for summary judgment." *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 501 (D. Md. 2019) (citing *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015)). "In particular, a court may consider documents that are 'explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits . . . .'" *Id.* (ellipsis in original) (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)). The Court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166. "To be integral, a document must be one that by its very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Brennan*, 361 F. Supp. 3d at 502 (emphasis and internal quotation marks omitted) (quoting *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)).

### B.   Discussion

Defendants argue that the Court should deny Plaintiff's Motion for Leave to File a Second Amended Complaint because the amendment is futile, highly prejudicial to Defendants, and brought in bad faith. ECF No. 40 at 2. The Court will address each of these arguments

below.

### 1.     Futility

Defendants' first argument is that Plaintiffs' proposed amendment is futile. Specifically,

Defendants assert that none of the claims outlined in the proposed Second Amended Complaint

would survive a motion to dismiss. Moreover, Defendants argue that the proposed Second

Amended Complaint does nothing to alter Defendants' argument, presented in three prior

Motions to Compel Arbitration, ECF No. 18; ECF No. 26; ECF No. 30, that Plaintiff's claims

are subject to mandatory arbitration. The Court will first address the viability of Plaintiff's

claims, guided by the arguments presented in Defendants Macy's, Citibank, and FDS's Motion

to Dismiss. ECF No. 30. The Court will then discuss whether Plaintiff's action is subject to a

mandatory arbitration agreement.

### a.     Futility Argument 1: Plaintiff's Claims Cannot Survive a Motion to Dismiss

Defendants present five reasons why Plaintiff's claims cannot survive a motion to

dismiss: (1) collective allegations/group pleading; (2) Plaintiff's lack of a relationship with

Macy's or FDS; (3) conclusory allegations regarding Citibank; (4) the FCRA preempts

Plaintiff's defamation claim; and (5) Plaintiff's failure to state a claim under the MCDCA and

the MCPA. The Court addresses each potential reason for dismissal below but finds none of

Defendants' arguments persuasive.

### i.     Collective Allegations Fail to Put Each Defendant on Notice of the Claims Against Each Defendant

Defendants argue that Plaintiff has set forth collective allegations that "fail to delineate

what defendant omitted or played what role in the alleged misconduct" and thus has failed to

satisfy the pleading requirements of Fed. R. Civ. P. 8(a)(2). ECF No. 30-1 at 8; *see also* ECF No.

40 at 8. The Court disagrees. As to Counts One and Two, which allege violations of the FCRA

and a defamation claim, Plaintiff alleges that: (1) DSNB, Macy's, and Citibank are all sources for information on the DSNB/MACYS tradeline that is reporting a charged off debt with a $124 outstanding balance, ECF No. 38-3 ¶ 3; (2) the information that DSNB, Macy's, and Citibank reported to the credit bureaus was inaccurate, *id.* ¶¶ 13–15; (3) Plaintiff sent a letter to the credit bureaus disputing the inaccurate information, *id.* ¶ 25; (4) Defendants, as sources of information, received an ACDV and a copy of the Plaintiff's dispute letter from the credit bureaus, *id.* ¶ 27; (5) in violation of the FCRA's requirements for furnishers of information to consumer reporting agencies, 15 U.S.C. § 1681s-2(b)(1)(A)–(E),  Defendants did not appropriately respond to the ACDV and instead adopted a policy of doing cursory, perfunctory reviews of credit disputes in order to avoid the costs of completing proper investigations, *id.* ¶¶ 28, 29; and (6) despite their failure to correct the inaccuracies, Defendants knew their reporting to the credit bureaus was false because Defendants' records clearly established the inaccuracy, Plaintiff had informed Defendants of the inaccuracy, and Plaintiff had paid off the $124 balance in July 2017, *id.* ¶¶ 11, 18–19, 35–36. As to Counts Three and Four, alleging violations of the MCDCA and the MCPA, Plaintiff alleges that: (1) Plaintiff's charge card was charged off in or about April 2016 at which point the account was transferred to Citibank for collections, *id.* ¶ 10; (2) Plaintiff paid off the charge account in full on or about July 24, 2017, in response to a communication from Citibank regarding the debt, *id.* ¶ 11; (3) Citibank, as the primary entity that services the DSNB/MACYS account, admitted that it does not know what the balance on the account was as of June 24, 2017, the day that the account was charged off, nor does it know what the balance on the account was as of July 24, 2017, the day Plaintiff paid off the debt, *id.* ¶¶ 16–17; (4) Plaintiff informed Citibank that the debt had been fully paid off, *id.* ¶ 18; (5) despite knowing that its records were incomplete, Citibank claimed Plaintiff owed $124 and attempted to collect that alleged balance,

*id.* ¶¶ 18–20, 41; and (6) Citibank was acting as an agent of Macy's when it attempted to collect

the $124 balance, *id.* ¶¶ 43–44. These allegations are sufficiently detailed to give all three

Defendants notice of Plaintiff's claims and each party's alleged role in the misconduct.[9]

### ii.  Plaintiff has Admitted that Plaintiff had No Relationship with Macy's or FDS

Defendants argue that Plaintiff's admission in the Joint Motion to Substitute Parties—

"Plaintiff's credit account that is the subject of this lawsuit was with DSNB only, and Plaintiff

did not and does not have a credit account with Macy's or FDS"—is fatal to Plaintiff's claims

against Macy's.[10] ECF No. 12; ECF No. 30-1 at 9–10. While the Court agrees that Plaintiff's

constant shifting of the defendants in this action is, at best, confusing, it does not find that

Plaintiff has failed to adequately allege its claims against Macy's.

Plaintiff has clearly alleged that Macy's is a source of information to the credit bureaus,

making it subject to the requirements of the FCRA. ECF No. 38-3 ¶ 12. Plaintiff's admission that

he did not and does not have a credit account with Macy's may make it less likely that Macy's is

a furnisher of information, but Plaintiff's allegation is still plausible. *Richards v. Berryhill*, 759

F. App'x 187, 189 (4th Cir. 2019) ("[T]o survive [a] Rule 12(b)(6) motion, [Plaintiff's]

allegation did not need to be proven, or even probably true; it only needed to be plausible on its

face."). In fact, Plaintiff has alleged in his proposed Second Amended Complaint that the contact

information provided by the credit bureaus in connection with the DSNB/MACYS tradeline is

the address and telephone number for Macy's, which supports an inference that Macy's acts as a

furnisher of information under the FCRA. ECF No. 38-3 ¶ 8; *see also* ECF No. 38-5; ECF No.

---

[9] To the extent Defendants argue that these allegations are false—*i.e.*, Defendants Macy's and Citibank are not furnishers of information under the FCRA—a motion to dismiss or a futility argument with respect to a motion for leave to file an amended complaint is not the place to make those arguments.

[10] Plaintiff has voluntarily dismissed FDS from this action and does not attempt to add FDS back into the action in his proposed Second Amended Complaint. ECF No. 36, ECF No. 38-3.

38-6; ECF No. 38-7.

Moreover, with respect to Macy's liability under the MCDCA and the MCPA, Plaintiff has clearly alleged that Citibank is a collector under the MCDCA and is inappropriately trying to collect a $124 balance, and that, in doing so, Citibank is acting as Macy's agent. Again, Plaintiff's admission regarding his lack of a credit account with Macy's makes this allegation less likely but not implausible, especially considering the affiliation between DSNB and Macy's, Macy's potential status as a furnisher of information, and the Court's responsibility to construe the facts in the light most favorable to the Plaintiff when weighing legal sufficiency. ECF No. 38-3 ¶ 5; *Nemet Chevrolet, Ltd.*, 591 F.3d at 255.

### iii. Plaintiff's Conclusory Allegations Regarding Citibank are Facially Implausible

Defendants again rely on the statement in the Joint Motion to Substitute Parties to argue that Plaintiff's claims against Citibank are implausible. ECF No. 30-1 at 10. Nevertheless, even if Plaintiff's credit card agreement was not with Citibank originally, Plaintiff has alleged that (1) the charge card account was transferred to Citibank for collections after it was charged off in or about April 2016, ECF No. 38-3 ¶ 10; (2) Citibank contacted Plaintiff about the account and Plaintiff paid off the charge account in full as a result, *id.* ¶ 11; (3) Citibank is the primary entity that services the DSNB/MACYS account, *id.* ¶ 16, (4) Citibank is a source for information on the DSNB/MACYS tradeline at issue in the FCRA claim, *id.* ¶ 12; and (5) Citibank, despite knowing its records are incomplete regarding the charge card account at issue here, continues to attempt to collect a $124 balance from Plaintiff, *id.* ¶ 19–20. None of these allegations appear to be implausible on their face such that Plaintiff's claims against Citibank cannot survive a motion to dismiss.

### iv. Plaintiff's Defamation Claim is Preempted by the

**FCRA**

Defendants argue that Count Two, Plaintiff's defamation claim, is preempted by the FCRA and thus the Court must dismiss that claim. ECF No. 30-1 at 11. The Court disagrees.

Under 15 U.S.C. § 1681(h)(e): "no consumer may bring any action or proceeding in the nature of defamation . . . with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681(h)(e); *see also Beuster v. Equifax Info. Servs.*, 434 F. Supp. 2d 471, 478–79 (D. Md. 2006) (discussing the interplay between 15 U.S.C. § 1681t(b)(1)(F) and 15 U.S.C. § 1681h(e) and determining that Congress intended § 1681h(e) to govern preemption of common law defamation). "Section 1681h(e) is implicated [here] because Plaintiff's defamation claim involves 'the reporting of information,' and is brought against a 'person who furnished information to a consumer reporting agency' (*e.g.*, Experian, Equifax, and TransUnion)." *Alston v. United Collections Bureau, Inc.*, No. DKC-13-0913, 2014 WL 859013, at *11 (D. Md. Mar. 4, 2014). Thus, if Plaintiff has adequately pleaded either malice or willful intent, his defamation claim survives.

"[E]stablishing willfulness requires showing that a defendant 'knowingly and intentionally committed an act in conscious disregard for the rights of others.'" *Magruder v. Educ. Sys. Fed. Credit Union*, 194 F. Supp. 3d 386, 391 (D. Md. 2016) (quoting *Beuster*, 434 F. Supp. 2d at 479). To allege malice, a plaintiff "must allege that a defendant published material while entertaining serious doubts as to the truth of the publication or with a high degree of awareness of probable falsity [or actual knowledge of falsity]." *Id.* (quoting *Beuster*, 434 F. Supp. 2d at 480) (internal quotation marks omitted)). However, under Fed. R. Civ. P. 9(b), "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see also Hatfill v. N.Y. Times Co.*, 416 F.3d 320, 329 (4th Cir. 2005)

13

(barring any application of heightened pleading standards to defamation actions); *Beuster*, 435 F. Supp. 2d at 480 ("At the 'nascent stage of litigation' presented by a motion to dismiss pursuant to Fed. R. Civ. 12(b)(6), the Federal Rules require only a general pleading of malice." (quoting *Boyd v. Nationwide Mut. Ins. Co.*, 208 F.3d 406, 410 (2d Cir. 2000))). Here, Plaintiff has sufficiently alleged facts that, if true, establish Defendants acted with malice, and thus the defamation claim is not barred by § 1681h(e) of the FCRA. *See* ECF No. 38-3 ¶ 35 ("Defendants knew their reporting was false"); *id.* ¶ 11 ("Plaintiff paid the charge account in full on or about July 24, 2017"); *id.* ¶ 16 ("Citi, the primary entity that services the DSNB/MACYS account, has admitted in a recent phone conversation with Plaintiff that it does not know what the balance was on the account as of June 24, 2016, which was the day that the account was charged off."); *id.* ¶ 17 ("Nor does Citi know what the balance was on the account as of July 24, 2017, which is the day it received the final payment of the account."); *id.* ¶ 19 ("Plaintiff apprised [Defendants] that the account had been paid in full[.]").[11]

> #### v.       Plaintiff's Vague and Conclusory Allegations Fail to State a Plausible Claim Under the MCDCA or the MCPA

Defendants final argument in their Motion to Dismiss was that Plaintiff failed to plead that Citibank knew that the $124 balance did not exist. ECF No. 30-1 at 12. This argument is without merit.

"The 'knowledge' requirement of the MCDCA has been interpreted as imposing liability against a defendant only where the plaintiff can show that the defendant 'attempt[e]d to enforce a right with actual knowledge or *with reckless disregard* as to the falsity of the existence of the

---

[11] Moreover, Plaintiff asserts that he mailed dispute letters to the credit bureaus as recently as February 2021, after this action was initiated, but Plaintiff still received dispute results thirty days later stating that Defendants did not make any corrections to their reporting. ECF No. 38-3 ¶¶ 25–26.

right.'" *Fontell v. Hassett*, 870 F. Supp. 2d 395, 407 (D. Md. 2012) (quoting *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 732 (D. Md. 2011)) (emphasis added). In his proposed Second Amended Complaint, Plaintiff alleges that (1) "[i]n response to a communication from Citi regarding the debt, the Plaintiff paid off the charge account in full on or about July 24, 2017[,]" ECF No. 38-3 ¶ 11; (2) "Plaintiff apprised Citi as he did with defendants MACY and DSNB that the account has been paid in full and should reflect a zero balance[,]" *id.* ¶ 18; and (3) Citibank attempted to collect on the $124 balance "when it knew it had no right to collect it[,]" *id.* ¶ 42. Moreover, Plaintiff pleads that Citibank admitted that it did not know what the balance of the account was on the date it was charged off nor on the date Plaintiff allegedly made a final full payment and that, despite Citibank's knowledge that its records were incomplete with respect to the balance, Citibank still attempted to collect the $124 balance. Thus, Plaintiff has pleaded that Citibank had knowledge that the $124 balance did not exist, or, at the least, Citibank acted with reckless disregard as to the falsity of the existence of its right to collect.

### b. Futility Argument 2: Plaintiff's Claims are Subject to a Mandatory Arbitration Agreement

Defendants DSNB, Macy's, and Citibank have all argued that, pursuant to sections 2 and 3 of the Federal Arbitration Act, 9 U.S.C. §§ 2, 3, this Court should compel Plaintiff to arbitrate his claims against Defendants DSNB, Macy's, and Citibank as required by a written Arbitration Agreement between Plaintiff and DSNB. ECF No. 18; ECF No. 26; ECF No. 30. Plaintiff disputed whether such an agreement exists. ECF No. 27. The Court will address the merits of Defendants' Motions to Compel Arbitration as part of its discussion on Plaintiff's Motion for Leave to File a Second Amended Complaint because it is relevant to whether such an amendment is futile.

A court may compel arbitration under the Federal Arbitration Act (the "FAA") if the

parties agreed in writing to arbitrate the dispute. *Adkins v. Labor Ready. Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002); *see also* 9 U.S.C. § 2 ("[A]n agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."). The FAA reflects the strong federal policy favoring arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). But "even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate." *Adkins*, 303 F.3d at 501. "Whether a party agreed to arbitrate a particular dispute is an issue for judicial determination to be decided as a matter of contract." *Johnson v. Circuit City Stores*, 148 F.3d 373, 377 (4th Cir.1998) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49 (1986)).

Courts in this District have recognized that "motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683 (D. Md. 2004*); see also PC Const. Co. v. City of Salisbury*, 871 F. Supp. 2d 475, 477 (D. Md. 2012). But where the parties dispute the validity of an arbitration agreement, "[m]otions to compel arbitration . . . are treated as motions for summary judgment." *Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245, 251 (D. Md. 2011).[12] Therefore, such motions "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[12] *See also Shaffer*, 321 F. Supp. 2d at 683–84 ("[I]n order to effectively assess the merits of this motion [to compel arbitration], . . . the court must consider documents outside the pleadings. As such. the Court will treat Defendant's motion as a motion for summary judgment.") (citing Fed. R. Civ. P. 12(c)); *Galloway v. Santander Consumer USA, Inc.*, No. CCB-13-3240, 2014 WL 4384641, at *2 (D. Md. Sept. 3, 2014) ("[D]istrict courts in this circuit have applied a summary judgment-like standard to the question of whether a contract to arbitrate was formed."); *accord Tickanen v. Harris & Harris, Ltd.*, 461 F. Supp. 2d 863, 866 (E.D. Wis. 2006) ("Motions to compel arbitration are reviewed under a summary judgment standard as set forth in Federal Rules of Civil Procedure 56(c)") (*citing Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n. 9 (3d Cir. 1980)).

Civ. P. 56(a). In considering the motion, "the judge's function is not . . . to weigh the evidence

and determine the truth of the matter but to determine whether there is a genuine issue for trial."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Moreover, the Court must "view the

evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in

h[is] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but

it also must abide by the "affirmative obligation of the trial judge to prevent factually

unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football

Club, Inc.*, 346 F.3d 514, 526 (4th Cir.2003) (internal quotation marks and citations omitted).

     In Defendant DSNB's Motion to Compel Arbitration, Defendants claim that: (1) Plaintiff

opened a Macy's Consumer Credit Card Account with DSNB in February 2015, ECF No. 18-2 at

1; ECF No. 18-7 ¶ 5; (2) Plaintiff's account was governed by a cardholder agreement, ECF No.

18-2 at 1–2; ECF No. 18-3 (credit card agreement); ECF No. 18-7 ¶ 5; (3) DSNB provided

notice to Plaintiff in April 2015 that it was changing the terms of the cardholder agreement

effective April 29, 2015 by mailing a change of terms letter and a change of terms agreement;

ECF No. 18-2 at 2; ECF No. 18-7 ¶ 6; *see also* ECF No. 18-4 (showing a change of terms letter

exemplar because DSNB did not retain a copy of the 2015 change of terms letter that it mailed to

Plaintiff); ECF No. 18-5 (showing a change of terms agreement exemplar because DSNB did not

retain a copy of the 2015 change of terms agreement that it sent to Plaintiff); ECF No. 18-7 ¶ 6

(stating that the exemplars duplicate the original 2015 change of terms letter and change of terms

agreement); (4) the modified cardholder agreement that was effective April 29, 2015 contained

an arbitration provision that applied to "all Claims . . . no matter what legal theory they're based

on or what remedy . . . they seek[.] . . . This also includes Claims made by or against anyone

connected with [DSNB] or [Plaintiff] . . . , such as a co-applicant, authorized user, employee,

agent, representative or an affiliated/parent/subsidiary company[,]" ECF No. 18-2 at 2; ECF No. 18-7 ¶ 6; ECF No. 18-4 at 2 ("we are adding an Arbitration provision"); ECF No. 18-5 at 10–12 (arbitration provision); (5) Plaintiff was given an opportunity to opt out of the agreement by calling DSNB at an identified phone number or writing DSNB at an identified address on or before August 21, 2015, ECF No. 18-2 at 2; ECF No. 18-7 ¶ 6; ECF No. 18-4 at 1 (describing ability to reject changes to the cardholder agreement); (6) if Plaintiff had rejected the changes, including the arbitration provision, the account would have been closed, ECF No. 18-7 ¶ 7; ECF No. 18-4 at 1; and (7) Plaintiff did not opt out of the modified cardholder agreement and continued to use the account after the opt-out date, ECF No. 18-2 at 2; ECF No. 18-7 ¶ 7; ECF No. 18-6 (account statement showing Plaintiff's use of the account after the opt-out date).[13] Based on these allegations, Defendants assert that Plaintiff's claims are subject to mandatory arbitration because they are brought against DSNB, Macy's, and Citibank and because the claims arise out of and relate to Plaintiff's account with DSNB. ECF No. 18-2 at 4; ECF No. 26-2 at 4; ECF No. 30-1 at 8; *see also Dwyer v. Discover Fin. Servs.*, No. WMN-15-2322, 2015 WL 7754369, at *3 (D. Md. Dec. 2, 2015) ("Plaintiff's case is no exception to the general rule that 'the use of credit cards amounts to acceptance of the terms of the cardholder agreements.' . . . When the Agreement was amended, Plaintiff consented to the changed terms by failing to reject any changes and continuing to use her credit card." (internal citations and quotation marks omitted)).

Plaintiff, however, "unequivocally denies that he received the notice modifying the account agreement" and claims instead that he has not consented to any arbitration agreement.

---

[13] DSNB's Renewed Motion to Compel, ECF No. 26, and Defendants Macy's and Citibank's Joint Motion to Compel, ECF No. 30, make the same claims using the same evidence. ECF No. 26-2 at 1–2; ECF No. 26-3; ECF No. 26-4; ECF No. 26-5; ECF No. 26-6; ECF No. 26-7; ECF No. 30-1 at 7.

ECF No. 27 at 1. Thus, Plaintiff argues the Court should find that no arbitration agreement exists.[14] *Id.* at 2. Plaintiff supports his argument by submitting a Declaration that states that, although he did open a credit account in 2015, received the credit card and credit card agreement in the mail, and used the credit card, none of the billing statements he received from Macy's included a change of terms agreement. ECF No. 28 ¶¶ 1–3, 6–8. Moreover, Plaintiff states in his Declaration that had he received notice that the terms of the credit card were being modified to require arbitration, he would have closed the account. *Id.* ¶ 10. Defendants respond to this argument by asserting Plaintiff's self-serving affidavit "is insufficient as a matter of law to create a genuine dispute of material fact regarding the Arbitration Agreement that governs his account with DSNB." ECF No. 29 at 2.

A plaintiff opposing a motion to compel arbitration must establish "genuine issues of material fact regarding the existence of an agreement to arbitrate[,]" which requires not only "an unequivocal denial that an arbitration agreement exists," but also "sufficient facts in support" of that denial. *See Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc*, 807 F.3d 553, 564 (4th Cir. 2015). However, Plaintiff argues that "[w]here, as here, receipt of [the notice] is a contested issue, [Plaintiff] is forced to prove a negative[,]" which "[t]he law has long recognized . . . is next to impossible." ECF No. 38-1 at 6 (quoting *Lupyan v. Corinthian Colleges, Inc.*, 761 F.3d 314, 322 (3d Cir. 2013). Moreover, even a self-serving and uncorroborated affidavit, if "based on personal knowledge or firsthand experience, . . . can be evidence of disputed material facts." *Lovett v. Cracker Barrell Old Country Store, Inc.*, 700 F. App'x 209, 212 (4th Cir. 2017).

---

[14] Plaintiff does not dispute that the Federal Arbitration Act would govern the arbitration agreement between the parties if such an agreement existed. Nor does he dispute that his claims would fall within the broad scope of the agreement Defendants describe if such an agreement existed. Finally, Plaintiff does not dispute that the parties are capable of contracting, that the object of the contract as described is lawful, or that there would have been sufficient consideration for such an agreement. Plaintiff only argues that he did not consent to the agreement.

Finally, Plaintiff argues that "the corroborating evidence to support Plaintiff's declaration—*i.e.*, proof that Defendants did not mail a notice to Plaintiff informing him of the modification of the cardholder agreement—is in possession of the Defendants, and thus Plaintiff is entitled to discovery. *Id.* Plaintiff's arguments are persuasive. Consequently, this Court takes the path of Judge Chuang in *Alston v. Barclays Bank Delaware*, No. TDC-18-2829, ECF No. 31 (D. Md. Apr. 16, 2019), and declines to compel arbitration at this time but concludes that "limited discovery is warranted in this case before the Court can determine whether arbitration is required."[15] *See also* Fed. R. Civ. P. 56(b) ("summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition"); *see also Crumpler v. Midland Credit Mgmt., Inc.*, No. 13-1953, 2013 WL 6576318, at *4 (E.D. Pa. Dec. 13, 2013) (denying without prejudice a motion to compel arbitration and granting limited discovery on whether the plaintiff actually received the defendant's terms and conditions requiring arbitration).

Because the allegations in Plaintiff's proposed Second Amended Complaint are sufficient to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and Plaintiff's claims are not clearly subject to a mandatory arbitration provision, Plaintiff's proposed amendment is not futile.

### 2.    Prejudice

Defendants second argument opposing Plaintiff's Motion for Leave to File a Second Amended Complaint is that further pleading would be "entirely dilatory and highly prejudicial to

---

[15] The defendants in *Alston v. Barclays Bank Delaware*, No. TDC-18-2829, ECF No. 19-1 (D. Md. Nov. 7, 2018), submitted an affidavit in support of their motion to compel that included more details regarding the mailing process than Defendants' affidavit in the instant case, ECF No. 18-7, but the Court still denied their motion based solely on plaintiff's self-serving claim that he had not received the relevant arbitration agreement. *See Alston v. Barclays Bank Delaware*, No. TDC-18-2829, ECF No. 19-1 ¶ 4 (D. Md. Nov. 7, 2018) ("The credit card is generated and mailed with these documents in a single package, called a 'Card Mailer.' The Card Mailer is generated in a clean room environment and every piece is weighed to ensure that all operative documents are included in the Card Mailer. If all of the operative documents are not enclosed in the Card Mailer, the Card mailer is automatically rejected and not mailed.").

Defendants[.]" ECF No. 40 at 2. Specifically, Defendants express concern that Plaintiff's Motion is "merely an effort to force Defendants to incur additional expense" and point out that Plaintiff has already amended his complaint once, Defendants have twice fully briefed their Motions to Compel Arbitration, and Plaintiff has failed to file oppositions to two of Defendants' Motions to Compel. *Id.*

While Defendants' frustration is understandable, it is not enough to find undue prejudice such that the Court should deny Plaintiff's Motion for Leave to File a Second Amended Complaint. First, "'the time, effort, and money . . . expended in litigating [a] case' do not constitute 'substantial prejudice'" weighing against leave to amend." *Class Produce Group, LLC v. Harleysville Worcester Ins. Co.*, No. ELH-16-3431, 2017 WL 2377105, at *9 (D. Md. May 31, 2017) (quoting *Nat'l Recovery Agency v. AIG Domestic Claims, Inc.*, No. 4:05-CV_0033, 2006 WL 1289545, at *3 (M.D. Pa. May 9, 2006)). Second, Defendants presume that they would be required to file another Motion to Compel Arbitration without the Court addressing the parties' previous briefing. This is not the case. The Court discussed the merits of Defendants' Motions to Compel Arbitration above, *see supra* § II.B.1.b, concluded that there is a dispute of material fact as to whether an arbitration agreement exists, and orders limited discovery with respect to whether Plaintiff received the modified cardholder agreement and the associated arbitration provision. Finally, discovery has not yet begun in this case nor has a trial date been set. It is, therefore, far from clear that allowing Plaintiff's amendment would significantly delay the resolution of the dispute.

Defendants have not sufficiently shown that Plaintiffs amendment will cause undue prejudice.

### 3.   Bad Faith and Improper Motive

Defendants final argument in support of denying Plaintiff's Motion for Leave to File a Second Amended Complaint is that Plaintiff's Motion was brought in bad faith. Again, Defendants' frustration with Plaintiff is understandable,[16] but the Court does not find Plaintiff has acted in bad faith. While Plaintiff has repeatedly added and subtracted defendants from this action, the record before the Court supports Plaintiff's choice of defendants in his proposed Second Amended Complaint: (1) his credit card agreement was with DSNB, ECF No. 12; (2) the credit bureaus provided Macy's contact information as the contact information associated with the DSNB/MACYS tradeline, ECF No. 38-3 ¶ 8; ECF No. 38-5; ECF No. 38-6; ECF No. 38-7; and (3) Citibank is the party attempting to collect the alleged $124 balance on the DSNB/MACYS account and is the party whose communication resulted in Plaintiff allegedly paying off the balance in July 2017, ECF No. 38-3 ¶¶ 10–11, 19–20; ECF No. 13, 15–16. Moreover, Plaintiff's proposed Second Amended Complaint, without changing the legal theories on which his claims are based, adds factual allegations to address the deficiencies Defendants identified in their Motion to Dismiss. Finally, the credit reports Plaintiff attaches as evidence, in an abundance of caution, to his proposed Second Amended Complaint—despite Plaintiff's entitlement to all reasonable inferences in his favor under the motion to dismiss standard—are from as recently as April 2021, ECF No. 38-7, and thus are not clearly a "belated presentation of facts which the pleader was already aware of[,]" *Carter v. SNC-Lavalin Constructors, Inc.*, No. DKC-17-3198, 2019 WL 918382, at *3 (D. Md. Feb. 25, 2019).

There is no indication Plaintiff's Motion for Leave to File a Second Amended Complaint was brought in bad faith.

---

[16] "[T]he Court will not ignore the obvious—the Alston family is engaged in, and profiting from, 'an enterprise of [FCRA] litigation.'" *Alston v. Branch Banking & Tr. Co.*, No. GJH-15-3100, 2018 WL 4538538, at *3 (D. Md. Sept. 20, 2018) (quoting *Alston v. Creditors Interchange Receivable Mgmt., LLC*, No. DKC-12-1709, 2012 WL 4370124, at *1 (D. Md. Sept. 21, 2012)).

## III.     REMAINING MOTIONS

### A.     Defendants' Motions to Compel Arbitration and Related Motions

To the extent DSNB's Motion to Compel Arbitration and to Stay, ECF No. 18, DSNB's Renewed Motion to Compel Arbitration, ECF No. 26, and Defendants Macy's, FDS, and Citibank's Joint Motion to Compel Arbitration or, in the Alternative, Motion to Dismiss are not moot due to Plaintiff's Second Amended Complaint,[17] those motions are denied without prejudice for the reasons discussed above, *see supra* § II.B.1.b.[18] The Court, however, grants limited discovery on whether Defendants sent, and Plaintiff received, the modified cardholder agreement that includes the arbitration provision at issue in DSNB's Motions to Compel.

### B.     Macy's Motion for Sanctions

Defendant Macy's requests sanctions under Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and the inherent powers of this Court because Plaintiff is allegedly in the "improper and vexatious pursuit of frivolous claims against Macy's[.]" ECF No. 37 at 1. The Court determined above, however, that Plaintiff's Second Amended Complaint, including the claims against Macy's, are not futile nor brought in bad faith. *See supra* §§ II.B.1 and II.B.3. Thus, this is not one of the rare instances in which Plaintiff's or his counsel's actions warrant sanctions. Fed. R. Civ. P. 11(b)(1); 28 U.S.C. § 1927; *see also Caseres v. S&R Mgmt Co.*, No. AW-12-1358, 2013 WL 5781582,

---

[17] "[I]f some of the defects raised in the original motion remain in the new pleading, the court simply *may* consider the motion as being addressed to the amended pleading because to hold otherwise would be to exalt form over substance." *Brooks v. Field*, No. , 2015 WL 13734242, at *1 n.2 (D.S.C. Sept. 24, 2015) (internal quotation marks, punctuation, and citations omitted) (emphasis in original). Therefore, because Plaintiff's Second Amended Complaint did not address the issue of whether Plaintiff's claims are subject to arbitration, the Court may consider Defendants' Motions to Compel as addressing the Second Amended Complaint. Thus, the Motions to Compel are not moot, except to the extent they address Plaintiff's claims against FDS, which Plaintiff voluntarily dismissed, ECF No. 36. Defendants' Macy's, FDS, and Citibank's Motion to Dismiss, ECF No. 30, however, is mooted by the Second Amended Complaint.

[18] The denial of Defendants Macy's, FDS, and Citibank's Motion to Compel Arbitration and the denial as moot of the alternative Motion to Dismiss moots Plaintiff's Motion for Leave to File His Opposition to Defendants' Motion to Compel. ECF No. 32.

at*2 (D. Md. Oct. 24, 2013) (stating that the imposition of sanctions under 28 U.S.C. § 1927 requires a clear showing of bad faith); *Baker v. Booz Allen Hamilton, Inc.*, No. RWT-06-889, 2008 WL 11425679, at *2 (D. Md. Oct. 31, 2008) (stating that Rule 11 requires "an attorney's or party's conduct be objectively unreasonable").

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to File a Second Amended Complaint is granted, and the remaining pending motions are denied. A separate Order shall issue.

Date: <u>September 30, 2021</u>                                 <u>        /s/                              </u>
                                                                         GEORGE J. HAZEL
                                                                         United States District Judge

24